IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JEROME DALE,                         *

      Plaintiff,                    *

           v.                    *        CIVIL NO.: WDQ-14-2152

MAYOR and CITY COUNCIL               *
Of BALTIMORE CITY, *et al.*,         *

      Defendants.                   *

  *     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Jerome Dale sued the Mayor and City Council of Baltimore City, the Baltimore City Police Department ("BCPD"), Commissioners of the BCPD, eight named police officers of the BCPD, and forty unnamed police officers for civil rights violations and Maryland state law claims.[1]  Pending are the City Defendants' motion to dismiss, the Commissioners and BCPD's motion to dismiss, and the named police officers motions to dismiss.[2]  No hearing is necessary.  *See* Local Rule 105.6 (D. Md.

---

[1] For the purposes of this Memorandum Opinion, the Mayor and City Council will be referred to as "the City Defendants."

[2] All of the pending motions were captioned as motions to dismiss, or, in the alternative, summary judgment.  The Commissioners and BCPD's motion, however, was mistakenly filed on CM/ECF as a motion for summary judgment.  The Court will construe all of the pending motions as motions to dismiss.

2014).  For the following reasons, all pending motions to
dismiss will be granted.

I.    Background[3]

On December 12, 2010, Jamila Wilson reported to a BCPD
officer[4] that she had been raped.  ECF No. 1 at ¶ 37.  She
informed the police that her attacker was "a short, slightly
built, middle aged male, with a medium brown complexion, a small

---

[3] On a motion to dismiss, the well-pled allegations in the
complaint are accepted as true.  *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011).  The Court will consider the
pleadings, matters of public record, and documents attached to
the motions that are integral to the complaint and whose
authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] The complaint fails to identify many of the individual police
officers.  In fact, there are very few allegations in the
complaint relating to Wilson's rape and Dale's subsequent
arrest.  The majority of the "factual" allegations of the
complaint consist of details about how Dale received a citizen's
award from President Ronald Reagan 30 years ago for "selflessly
r[unning] into a fiery inferno and sav[ing] two infant
children," quotes from newspaper articles about the BCPD, and
arguments and depositions from a different civil case involving
different police officers that was pending when this complaint
was filed.

Uncontextualized newspaper reports are not "facts" that
must be accepted as true on a motion to dismiss.  Even if the
Court were to accept the content of the newspaper reports as
true, as well as the reports from the police officers in the
other civil case, they would not aid in making Dale's claims
plausible under Rule 8.  The newspaper articles and other civil
case all detail events that occurred in 2007-2009.  Dale's
arrest occurred in 2011, and the complaint pleads no facts
linking the articles and depositions to the events of his
arrest.  Dale only makes conclusory statements that he was
the victim of an "ongoing and cruel scheme" involving a quota
system.  *See, e.g.*, ECF No. 1 at ¶¶ 1-5, 26-36.

face with eyes close together, and a []normal haircut." *Id.* at ¶ 44. Wilson underwent an examination to preserve any DNA evidence left by her attacker. *Id.* at ¶ 54.

On January 17, 2011, Dale was walking to a bus stop on Edmondson Avenue when "he happened to see out of the corner of one of his eyes what appeared to be two young men chasing him down the street."[5] ECF No. 1 at ¶¶ 40-41. Dale ran to the bus stop, jumped onto the arriving bus, and informed the bus driver that he was being chased by two men. *Id.* at 41. The bus driver "called the Maryland Transit Authority Police, who arranged to meet [] Dale at Mondawmin Station." *Id.*

Before reaching the Mondawmin Station, Dale saw two BCPD officers--later identified as Officer Ruganzu B. Howard and Officer Shawn M. Parlett--standing outside the 7-Eleven at 2500 Liberty Heights Avenue. ECF No. 1 at ¶ 41. Dale got off of the bus and explained to the officers that "he was being chased by two young men and that he feared for his life." *Id.* at ¶¶ 41-42. "[B]efore the [] [o]fficers had a chance to respond, a tan sedan containing [] Wilson and her [a]ssociates pulled into the parking lot of the 7-Eleven." *Id.* Dale identified the two men

---

[5] Wilson lived a few blocks from the bus stop, and, according to the Statement of Probable Cause--which Dale summarizes in the complaint, but did not attach--Wilson saw Dale walking on the 1700 block of Edmondson Avenue and identified Dale as her attacker to her "acquaintances." *See* ECF No. 1 at ¶¶ 40, 44.

in the sedan as the men he had been running from, and the officers "instructed [] Dale to wait inside the 7-Eleven." *Id.*

Wilson approached Officer Howard and Officer Parlett and "identified [] Dale as the man who raped her the previous month," saying, "That's him." ECF No. 1 at ¶ 43. Moreover, Dale matched the description of the attacker that Wilson provided to police in December 2010. *Id.* Dale alleges, however, that Wilson's identification was "rendered . . . a nullity" because it occurred a month after Wilson's attack, and it was made through the 7-Eleven window, at night, while it was snowing, and Dale was wearing winter clothing.[6] *Id.* at ¶¶ 43-44.

Following Wilson's identification, Dale was arrested for the rape.[7] Dale alleges that the BCPD "concluded and otherwise ceased all investigations surrounding the reported rape of []

---

[6] The complaint asserts that the officers should have conducted a "show-up identification" at the 7-Eleven. ECF No. 1 at ¶¶ 43-44. However, the complaint later states that even if such an identification had been performed, it would have been inconsequential because "it would nonetheless have suffered from the same impairments that [] Wilson's reported identification suffered from; the darkness of night, the cover of snowfall, the cover of winter clothing used for protection from the elements, the extreme distance, and the erosion of time." *Id.*

[7] The complaint fails to allege when and how Dale was arrested. The only information in the complaint about the arrest is that Dale refers to Officer Howard and Officer Parlett as the "arresting officers." *See* ECF No. 1 at ¶¶ 41-42. After the identification at the 7-Eleven, the next chronological fact the complaint provides is that the "Assistant State's Attorney filed his notice of intent to use DNA evidence with the Circuit Court for Baltimore City on May 5, 2011, about a month before [] Dale's first trial date . . . ." *Id.* at ¶ 54.

Wilson following her reported positive eyewitness identification of [] Dale." ECF No. 1 at ¶ 48. No police officer made "any attempt to confirm [] Dale's alibis, despite his vehement statements that at least four different people could attest to his whereabouts on the evening of [] Wilson's reported rape." Id. at ¶ 49. "[F]inally, the [police] did not make any attempt to ascertain whether [] Dale was in possession of the defining clothing [] Wilson's assailant was reported to have been wearing on the night of [] Wilson's reported rape . . . ." Id.

"[O]n May 5, 2011, about a month before [] Dale's first trial date," the Assistant State's Attorney ("ASA") filed notice of the prosecution's intent to use DNA evidence. ECF No. 1 at ¶ 54. Later, the ASA requested a postponement of the original trial date because the prosecution did not have the testing results. Id. at ¶ 56. On August 17, 2011, the ASA nolle prossed the charges against Dale, and Dale was released based on the results of the DNA tests. See id. Dale alleged that the delay receiving the test results was due to a "conspiracy and misconduct in the crime lab."[8] Id. at ¶ 55.

---

[8] Dale bases this allegation on a 2008 newspaper article which stated that "Baltimore police detectives instructed crime lab technicians not to follow up on DNA found on evidence at crime scenes." ECF No. 1 at ¶ 52. According to Dale, this report means that "police department detectives were intentionally arresting innocent people for the most serious crimes chargeable under Maryland law and, thereafter, subjecting them to false imprisonment." Id.

On January 4, 2012, Dale mailed the Baltimore City Solicitor notice under Maryland's Local Government Tort Claims Act ("LGTCA").[9]   ECF No. 1 at ¶ 24.   On July 3, 2014, Dale filed suit in this Court, alleging 16 causes of action.[10]   ECF No. 1. On October 30, 2014, the City Defendants moved to dismiss for

---

[9] Md. Code Ann., Cts. & Jud. Proc. §§ 5-301, *et seq.*

[10] The claims in the complaint are "municipal liability" under 42 U.S.C. § 1983 against BCPD and the City Defendants (Count I), violation of Dale's Fourth and Fifth Amendment Rights under 42 U.S.C. § 1983 against the Commissioners and 20 of the unnamed police officers (Count II), malicious prosecution under 42 U.S.C. § 1983 against all defendants except the City Defendants (Count III), use of "unconstitutional identification procedures" under 42 U.S.C. § 1983 against all defendants except the City Defendants (Count IV), failure to disclose exculpatory evidence and fabrication of inculpatory evidence in violation of 42 U.S.C. § 1983 against all defendants except the City Defendants (Count V), failure to investigate in violation of 42 U.S.C. § 1983 against all defendants except the City Defendants (Count VI), false arrest and false imprisonment in violation of 42 U.S.C. § 1983 against all defendants except the City Defendants (Count VII), "violation and conspiracy to violate rights secured under Articles Twenty-Four and Twenty-Six of the Maryland Declaration of Rights" against all defendants except the City Defendants (Count VIII), Maryland battery claim against all defendants except the City Defendants (Count IX), Maryland false arrest and false imprisonment claim against all defendants except the City Defendants (Count X), Maryland abuse of process claim against all defendants except the City Defendants (Count XI), Maryland negligence claim against all defendants except the City Defendants (Count XII), Maryland negligent failure to warn claim against all defendants except the City Defendants (Count XIII), Maryland negligent hiring, training, and supervision claim against the Commissioners and twenty of the unnamed police officers (Count XIV), Maryland malicious prosecution claim against all defendants except the City Defendants (Count XV), and Maryland intentional infliction of emotional distress claim against all defendants except the City Defendants (Count XVI).

failure to state a claim.  ECF No. 6.[11]  On January 15, 2015,

Commissioner Batts, Commissioner Bealefeld, and the BCPD moved

to dismiss.  ECF No. 17.[12]  On March 18, 2015, the Clerk entered

default against Officers Armstrong, Howard, Parlett, Stauder,

and Wolfe.  ECF Nos. 26-27.  On that same day, Officers

Armstrong, Howard, Parlett, Stauder, and Wolfe moved to vacate

the entry of default[13] and to dismiss.  ECF Nos. 28-29.  On March

31, 2015, Officers Poore and Sloan moved to dismiss, joining in

the arguments of Officers Armstrong, Howard, Parlett, Stauder,

and Wolfe.  ECF No. 32.  On April 21, 2015, Officer Heflin did

the same.  ECF No. 36.[14]

---

[11] On December 18, 2014, Dale opposed the motion.  ECF No. 13.
On January 7, 2015, the City Defendants replied.  ECF No. 16.
On May 11, 2015, Dale filed another opposition, which the Court
will construe as an impermissible surreply.  ECF No. 39.

[12] On May 11, 2015, Dale opposed the motion.  ECF No. 38.  On May
28, 2015, the Commissioners and the BCPD replied.  ECF No. 43.

[13] Dale did not oppose the motion to vacate the entry of default.
Because entry of a default judgment is left to the court's
discretion, and the Fourth Circuit has a "strong policy" that
"cases be decided on the merits," the Court will grant the
motion to vacate the Clerk's entry of default.  *Dow v. Jones*,
232 F. Supp. 2d 491, 494-95 (D. Md. 2002) (*citing United States
v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

[14] On May 11, 2015, Dale jointly opposed the police officers'
motions to dismiss.  ECF No. 37.  On May 28, 2015, the police
officers replied jointly.  ECF No. 45.

II.  Analysis

  A. Legal Standard

     Under Fed. R. Civ. P. 12(b)(6), an action can be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

     The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must not only allege

but also "show" that the plaintiff is entitled to relief. *Id.*
at 679 (internal quotation marks omitted).  "Whe[n] the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged—but it
has not shown—that the pleader is entitled to relief." *Id.*
(internal quotation marks and alteration omitted).

   B. The City Defendants' Motion to Dismiss

      Dale alleges that the City Defendants violated 42 U.S.C. §
1983 pursuant to *Monell v. Department of Social Services of the
City of New York*, 436 U.S. 658 (1978).  Dale asserts that the
City Defendants "through its final policy makers, had in force
and effect unconstitutional policies, customs, and/or patterns
and practices encouraging and requiring officers to fabricate
evidence, withhold *Brady* material, make arrests without probable
cause or legal justification, and to falsely imprison
Baltimoreans."  ECF No. 1 at ¶ 59.  The complaint also alleges
that the City Defendants "had policies, customs, and/or patterns
and practices of failing to properly discipline, train, and
supervise its police officers, including the Police Officers, in
the proper way to conduct investigations, disclose *Brady*
materials, and collect evidence."  *Id.* at ¶ 65.  The City
Defendants argue that the *Monell* claims must be dismissed

because the BCPD is an agency of the state over which the City

Defendants had no control.[15]  *See* ECF No. 6-1 at 2-3.

Section 1883 provides a remedy to persons whose

constitutional rights were violated under the color of law.  *See*

42 U.S.C. § 1983.  In *Monell*, the Supreme Court determined that

a local government could be held liable under § 1983, but only

if "the action that is alleged to be unconstitutional implements

or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's

officers."  436 U.S. at 690-91.  Therefore, the threshold

question becomes whether the City Defendants have sufficient

control over the BCPD to cause the § 1983 violations.[16]  *See*

---

[15] The City Defendants emphasize that *Monell* requires causation,
and, as a matter of law, the City Defendants could not "cause"
any of BCPD's actions.  ECF No. 6-1 at 2-3; *see also Monell*, 436
U.S. at 692 ("The [] language [of § 1983] plainly imposes
liability on a government that, under color of some official
policy, 'causes' an employee to violate another's constitutional
rights.  At the same time, that language cannot be easily read
to impose liability vicariously on governing bodies solely on
the basis of the existence of an employer-employee relationship
with a tortfeasor.  Indeed, the fact that Congress did
specifically provide that A's tort became B's liability if B
'caused' A to subject another to a tort suggests that Congress
did not intend § 1983 liability to attach where such causation
was absent.").

[16] Dale asserts that this approach misunderstands *Monell*.  *See*
ECF No. 13 at 19-20.  He argues that it is irrelevant whether
the individual police officers were "employees" or in the
control of the City Defendants, because the City Defendants are
liable for their municipal employees and those municipal
employees caused the violation through their relationship with
the police commissioner.  *See id.*  The complaint is devoid of

*Monell*, 436 U.S. at 692; *Creasy v. Mayor of City of Baltimore*, No. JFM-11-1870, 2012 WL 1044426, at *2 (D. Md. Mar. 26, 2012).

It is undisputed that the BCPD is a state agency. *See Clea v. Mayor & Cty. Council of Balt.*, 541 A.2d 1303, 668, 669 (Md. 1988). Therefore, courts "ha[ve] repeatedly concluded the City does not sufficiently control the BPD to be responsible for Baltimore police officer conduct under § 1983." *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 644 (D. Md. 2014).[17]

---

any facts to support this argument. Other than conclusionary assertions that the City Defendants knew of the BCPD's actions and had a policy which created those actions, the complaint provides no fact showing action or inaction on a part of the City Defendants *or any municipal employee* which resulted in the constitutional injury. *See Creasy*, 2012 WL 1044426, at *2 ("Plaintiff has pointed to no action or inaction on the part of the Mayor of Baltimore City or the Commissioner that resulted in a constitutional injury, and accordingly, his claim against them is subject to dismissal."). Accordingly, the complaint fails to state a claim against the City Defendants unless they may be held liable for the conduct of the police officers. *See Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 644 (D. Md. 2014) ("In other words, *Monell* allows plaintiffs to sue the City under § 1983 for the unconstitutional conduct of its employees. The threshold question then becomes whether Baltimore police officers are City employees.").

[17] *See also Creasy,* 2012 WL 1044426, at *2; *Brown v. Balt. Police Dep't,* No. RDB-11-00136, 2011 WL 6415366, at *6 (D. Md. Dec. 21, 2011) ("BPD officers are not City employees and the City does not exercise control over the BPD and its employees."); *Chin v. City of Balt.*, 241 F.Supp.2d 546, 549 (D. Md. 2003) ("[T]he Baltimore City government does not wield enough control over the Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions."); *Carter v. Mayor & City Council of Balt.*, 164 F. Supp. 2d 509, 517 (D. Md. 2001) ("It is well established that Baltimore City cannot be regarded as the employer of members of the Baltimore City Police

Similarly, Maryland courts have determined that "Baltimore City should not be regarded as the employer of members of the Baltimore City Police Department for purposes of tort liability." *Clea*, 541 A.2d at 669; *see also Mayor & Cty. Council of Balt. v. Clark*, 944 A.2d 1122, 1130 (Md. 2008) ("The decisions of this Court concerning the liability of the City of Baltimore for the acts, activity and inaction of the Police Department, *over which it has no power*, have been consistent and unequivocal, premised on, and holding uniformly, that the Baltimore Police Department is an entity of the State, and not of the City of Baltimore.") (emphasis added).

Dale urges the Court to adopt the reasoning in *Wilcher v. Curley*, 519 F. Supp. 1 (D. Md. 1980) and *Hector v. Weglein*, 558 F. Supp. 194 (D. Md. 1982). *See* ECF No. 13 at 16-17. In *Wilcher* and *Hector*, the courts were mainly concerned with whether the City and BCPD were sufficiently connected so that the BCPD could not assert liability under the Eleventh Amendment. *Wilcher*, 519 F. Supp. at 4-5; *Hector*, 558 F. Supp. at 199. The *Wilcher* court summarily disposed of whether the City controlled the BCPD for purposes of § 1983 liability in a footnote, while the *Hector* court never addressed the issue. *See Wilcher*, 519 F. Supp. at 4-5; *Hector*, 558 F. Supp. at 199.

Department."), *vacated on other grounds sub nom. Carter v. Balt. Cnty., Md.*, 39 Fed. Appx. 930 (4th Cir. 2002).

*Wilcher* and *Hector* spawned a small line of cases which held that "the City sufficiently controlled the BPD and could be liable under § 1983 for Baltimore police officer conduct."[18] *Anderson*, 6 F. Supp. 3d at 644-46 (analyzing *Wilcher*).

In *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 644 (D. Md. 2014), Judge Russell examined the dichotomy between the *Wilcher* line of cases and the copious case law holding that the City does not control the BCPD for purposes of § 1983.  Judge Russell concluded that the *Wilcher* cases "merged the analysis as to whether the City could be liable for Baltimore police officer conduct under § 1983 with . . . Eleventh Amendment [sovereign immunity] analysis."  *Id*.  The reasoning in *Anderson* is persuasive and explains the apparent disparity in prior case law.

Moreover, all other cases cited by Dale outside of the *Wilcher* progeny are analyzing Eleventh Amendment connections. *See* ECF No. 13 at 17-18.  Despite the *Wilcher* line of cases, whether there are sufficient connections between the BCPD and the local government to preclude a claim of sovereign immunity by the BCPD is a different question from whether the City *controls* the BCPD to establish *Monell* liability, even if they

---

[18] *Humbert v. O'Malley*, No. WDQ-11-0440, 2011 WL 6019689, at *5 (D. Md. Nov. 29, 2011), this Court relied on *Wilcher* and its progeny without analysis to deny the City's motion to dismiss on the same argument presented here.

may rely on some of the same facts.  These analyzes should not be collapsed into one.

Dale has cited no action or inaction by the City Defendants to establish liability under § 1983, and the BCPD officers, as a matter of law, are not the City Defendants' "employees" under *Monell*.  Accordingly, the claims against the City Defendants must be dismissed.

C. The Police Defendants' Motions to Dismiss[19]

The complaint only contains factual allegations against Officers Howard and Parlett.  *See, e.g.*, ECF No.1 at ¶¶ 41-43. The remaining police defendants are merely named as defendants in the "Parties" section of the complaint, with conclusionary assertions that they were working as agents of the BCPD and City Defendants.  *Id.* at ¶¶ 10-20.  These allegations are insufficient to state a claim under Rule 8.

Further, former Commissioner Batts was not sworn into office until November 8, 2012.[20]  All factual allegations in the complaint terminate on August 17, 2011.  ECF No. 1 at ¶ 56.

---

[19] Although the Commissioners and the BCPD filed their motion to dismiss separately from the named police officers, all police defendants presented the same arguments for dismissal. Accordingly, the Court will address these arguments together.

[20] *See Holloman v. Rawlings-Blake*, No.  , 2014 WL 7146894, at *5, n. 14 (D. Md. Dec. 12, 2014) (taking judicial notice of when Commissioner Batts was sworn in and dismissing the charges against him).

Therefore, Commissioner Batts's actions could not be the cause of Dale's constitutional injury, and all allegations against former Commissioner Batts must be dismissed.

Accordingly, the Court will only analyze the claims in the complaint as they relate to the remaining defendants--the BCPD, former Commissioner Bealefeld, Officer Howard, and Officer Parlett.[21]

1. Statute of Limitations

The Police Defendants argue that all of Dale's claims except his state and federal malicious prosecution claims must be dismissed because they violate the statute of limitations. *See* ECF No. 17 at 23-24; ECF No. 29-1 at 6-5.  Dale argues that he filed his complaint within the limitations period because the statute of limitations did not begin to run until his release on August 17, 2011.  ECF No. 38-1 at 15-16.

a. Federal Claims

There is no federal statute of limitations applicable to a § 1983 action.  "Thus, to determine the timely filing of a § 1983 claim, courts borrow the statute of limitations from the most analogous state-law cause of action."  *Owens v. Balt. Cty. State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014). "For § 1983 suits, that cause of action is a personal-injury

---

[21] For the remainder of this Memorandum Opinion, these individuals will be referred to collectively as the "Police Defendants."

suit;" therefore, Maryland's three-year statute of limitations for personal-injury actions applies. *Id.* (citing *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)); see also Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Although Maryland law determines the limitations period for Dale's § 1983 claims, federal law governs when the statute of limitations begins to run. *Owens,* 767 F.3d at 388-89. "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." *Wallace v. Kato,* 549 U.S. 384, 388 (2007). This generally occurs "when the plaintiff knows or has reason to know of his injury." *Owens,* 767 F.3d at 389. However, "if the common law provides a 'distinctive rule' for determining when the limitations period for a particular tort begins to run, a court must 'consider[ ]' this 'refinement' in determining when the limitations period for the plaintiff's analogous claim under § 1983 should commence." *Id.* (quoting *Wallace,* 549 U.S. at 388).

Dale alleges five § 1983 claims against the Police Defendants: malicious prosecution, unconstitutional identification procedures, violations under *Brady v. Maryland,* 373 U.S. 83 (1963), failure to investigate, and "false arrest/false imprisonment."

As an initial matter, the Police Defendants concede that Dale's malicious prosecution claim was filed within the

16

limitations period.  *See* ECF No. 29-1 at 6; ECF No. 43 at 7.  In *Owens*, the Fourth Circuit determined that malicious prosecution "provides the closest analogy to [a] *Brady*-like claim."  767 F.3d at 390.  Therefore, Dale's *Brady* claim was filed within the limitations period because his malicious prosecution claim was filed within the limitations period.

In *Wallace v. Kato*, 549 U.S. 384, 390 (2007), the Supreme Court analyzed when the limitations period for a § 1983 false arrest claim began to run.  The Court recognized that "a person falsely imprisoned has the right to sue on the first day of his detention."  *Id*.  However, under the common law, the limitations period only began at the end of the plaintiff's imprisonment.  *Id*. at 389.  Therefore, the Supreme Court deferred to the "distinctive" common law rule and found that the operative limitations period did not begin until the end of the false imprisonment.  *Id*. at 391-92.  "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id*. at 389 (emphasis in original).[22]

---

[22] "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and

17

According to state court records,[23] Dale was arraigned on
March 21, 2011.  Dale had until March 21, 2014, to file his
false arrest and imprisonment claim.  Dale filed the complaint
on July 3, 2014.  ECF No. 1.  Therefore, his false arrest and
imprisonment claim under § 1983 is barred by the statute of
limitations and must be dismissed.

Dale's remaining two § 1983 claims are also barred by the
statute of limitations.  In Count IV, Dale alleges that the
Police Defendants violated the Fourth and Fourteenth Amendments
by using "unconstitutional identification procedures."[24]  ECF No.

---

on the wrongful use of judicial process rather than detention
itself."  W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and
Keeton on Law of Torts § 119, pp. 885-888 (5th ed. 1984) (quoted
in Wallace, 549 at 389).

[23] Courts may take judicial notice of matters of public record on
motions to dismiss.  See Philips v. Pitt Cnty. Mem'l Hosp., 572
F.3d 176, 180 (4th Cir. 2009).

[24] Dale has not identified the source of his claim that the
Fourth Amendment protects him from "suggestive identification
procedures."  See ECF No. 1 at 50.  Although the Fourteenth
Amendment protects against unnecessarily suggestive
identification procedures, this right "only protect[s] . . .
against the admission of unconfronted and unreliable
identification evidence at trial."  Antonio v. Moore, 174 F.
App'x 131, 134-36 (4th Cir. 2006) (affirming dismissal of claim
that suggestive identification procedure violated the Fourteenth
Amendment because defendant pled guilty to charged crime and was
not tried).  Dale was never tried on the charge of the rape of
Wilson.  Further, Dale does not show how the photo array used by
the police defendants was "suggestive."  Dale only argues that
the police should not have relied on the identifications, not
that the officers did anything to sway the identification.
Accordingly, because Dale has not pled a constitutional

1 at ¶¶ 90-95.  Dale asserts that Wilson's identification was "utterly lacking in requisite indicia of reliability" and no reasonable police officer would have relied on it.  *Id.*

Under the general federal rule, the statute of limitations would have begun to run when Dale was arrested based on the identification.  *See Owens*, 767 F.3d at 389 (limitations period begins to run "when the plaintiff knows or has reason to know of his injury").  The parties do not cite an analogous common law statute that may have altered the general rule.  At the most, Dale's unconstitutional identification procedures claim is analogous to his false arrest and imprisonment claim (i.e. detained without legal cause).  Therefore, Dale's unconstitutional identification procedures claim is also barred by the statute of limitations.

Dale's failure to investigate claim is also most analogous to his false arrest claim.  In Count VI, Dale generally alleges that the Police Defendants failed to adequately investigate Wilson's rape.  *See* ECF No. 1 at ¶¶ 105-114.  In Count VI, Dale does not specify what the Police should have investigated.  *See id.*  However, elsewhere in the complaint, Dale asserts that police "did not make any attempt to confirm Mr. Dale's alibis" or "to ascertain whether Mr. Dale was in possession of the

violation with respect to Count IV, the claim must be dismissed even if it was not barred by the statute of limitations.

defining clothing Ms. Wilson's assailant was reported to have been wearing on the night of Ms. Wilson's reported rape or even if Mr. Dale was able to drive." This is analogous to Dale's claim that he was falsely arrested based solely on an improper identification.[25] Accordingly, this claim is also barred by the statute of limitations and must be dismissed.

b. State Law False Arrest and Imprisonment Claim[26]

Unlike the Supreme Court in *Wallace*, Maryland Courts have determined that the limitations period for a false arrest claim for a plaintiff who was "imprisoned while awaiting trial, but never tried" does not begin to run until the plaintiff's release from prison. *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 875-76 (Md. 2011). "A falsely imprisoned person's failure to immediately initiate a civil tort claim is not usually caused by neglect or imprudence, but instead by 'the reality that the

---

[25] Even if Dale's failure to investigate claim was more analogous to his malicious prosecution claim and was not barred by the statute of limitations, it would be dismissed because the police officers had probable cause to arrest Dale. *See infra* Part II.C.2.

[26] The Police Defendants concede that the state law malicious prosecution claim was not barred by the statute of limitations. *See* ECF No. 29-1 at 6; ECF No. 43 at 6-8.

Because Dale's remaining state claims are intertwined with his malicious prosecution and false arrest claims, and will be dismissed on other grounds, the Court will not analyze whether each remaining state law claim is barred by the statute of limitations.

victim may not be able to sue while he is still imprisoned.'"
*Id.* (quoting *Wallace*, 549 U.S. at 389).  Dale was released from
custody on August 17, 2011.  Therefore, his state false arrest
and imprisonment claim is not time-barred.

2. Probable Cause

False imprisonment, false arrest, and malicious
prosecution[27] require Dale to show that Officers Howard and
Parlett either lacked probable cause or legal justification for
Dale's arrest.[28]

---

[27] A § 1983 malicious prosecution claim requires Dale to show
that (1) the Police Defendants instituted a criminal proceeding
against Dale; (2) the Police Defendants did not have probable
cause to institute the proceeding; and (3) the criminal
proceedings have terminated in Dale's favor.  *Burrell v.
Virginia*, 395 F.3d 508, 514 (4th Cir. 2005).  "Although malice
is required to state a claim for malicious prosecution at common
law, the reasonableness of a seizure under the Fourth Amendment
should be analyzed objectively." *Id.* at 514 n.5.

[28] *See Burrell*, 395 F.3d at 514 (malicious prosecution); *Kelly v.
Bencheck*, No. 96-6780, 1997 U.S. App. LEXIS 3316, at *4-5 (4th
Cir. Feb. 24, 1997) (*per curiam*) (false arrest); *Ross v. Early*,
899 F. Supp. 2d 415, 430 (D. Md. 2012) (false arrest and false
imprisonment).

False imprisonment and false arrest require a showing that
the Police Defendants detained the plaintiff without legal
justification rather than probable cause.  *See Ross*, 899 F.
Supp. 2d at 430.  "Courts equate legal justification with legal
authority and look to the principles applicable to the law of
arrest to determine whether the alleged deprivation was
justified." *Id.*  Thus, the presence of probable cause may be
relevant to the legal justification analysis.  *See Kelly*, 1997
U.S. App. LEXIS 3316, at *4 ("A plaintiff can only succeed in an
action for false arrest under § 1983 if he can prove that the
police officers lacked probable cause to arrest him."); McDaniel
v. Arnold, 898 F. Supp. 2d 809, 848 (D. Md. 2012); *Branch v,*

Under federal law probable cause is facts and circumstances "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Burrell*, 395 F.3d at 514 (*citing Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir.2003)).  The Court must look only to the facts Officers Howard and Parlett had available to them at the time of the arrest.[29]  Probable cause does "not require officials to possess an airtight case before taking action," and officers "must be given leeway to draw reasonable conclusions" from information.  *Taylor v. Farmer*, 13 F.3d 117, 121–22 (4th Cir. 1993).  Probable cause requires more than "bare suspicion," but "less than evidence necessary to convict."  *Pleasants v. Town of Louisa*, 524 F. App'x 891, 897 (4th Cir. 2013) (internal quotations omitted).

---

*McGeeney*, 718 A.2d 631, 642 (Md. Ct. Spec. App. 1998) ("The officers possessed probable cause to arrest appellant, which disposes of appellant's claims of malicious prosecution, false imprisonment, [and] false arrest . . . .") (internal citations omitted).

[29] *See Kelly v. Bencheck*, U.S. App. LEXIS 3316, at *5-6 ("In determining probable cause a reviewing court does not speculate as to the *subjective* mindset of the person arrested at the time of arrest. Instead, the court looks to the information that the officer had at the time of arrest. . .   The fact that Kelly was acquitted of the assault charge at his criminal trial does not alter the determination as to whether probable cause existed at the time of arrest.") (internal citations omitted).

"[A] finding of probable cause may be based on information
provided by a victim or eyewitness to a crime, as 'it is well-
established that [w]hen an officer has received...information
from some person—normally the putative victim or an eye witness—
*who it seems reasonable to believe is telling the truth*, he has
probable cause.'"   *United States v. Beckham*, 325 F. Supp. 2d
678, 687-88 (E.D. Va. 2004) (quoting *Spiegel v. Cortese,* 196
F.3d 717, 724 (7th Cir. 1999), *cert. denied,* 530 U.S. 1243
(2000)) (emphasis added).  According to the Fourth Circuit,
"[i]t is surely reasonable for a police officer to base his
belief in probable cause on a victim's reliable identification
of his attacker," as "it is difficult to imagine how a police
officer could obtain better evidence of probable cause than an
identification by name of assailants provided by a victim,
unless, perchance, the officer were to witness the crime
himself."  *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir.
1991).  Therefore, "[a]n eyewitness identification will
constitute sufficient probable cause unless, at the time of the
arrest, there is an apparent reason for the officer to believe
that the eyewitness was lying, did not accurately describe what
he had seen, or was in some fashion mistaken regarding his
recollection of the confrontation."  *Ahlers v. Schebil*, 188 F.3d

23

365, 370 (6th Cir. 1999) (citations and internal quotation marks omitted).[30]

A victim identification of a suspect is not sufficient to establish probable cause, however, if there is "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers" that could "outweigh the identification." *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000). Moreover, if "information from or about a putative victim of crime would lead a reasonable officer to be suspicious, the officer should conduct further investigation before making an arrest." *Beckham*, 325 F. Supp. 2d at 687-88 (quotation and citation omitted).

Here, according to the complaint, Wilson identified Dale while he was walking to a bus stop, causing her two associates to chase him. When Wilson and her associates reached Officers Howard and Parlett, she informed them that she had identified Dale as her attacker, and did so again at the 7-Eleven. Although Dale attacks the circumstances under which Wilson made the identification--a month after her attack, in the dark and

---

[30] *See also Crouch v. City of Hyattsville*, CIV.A. DKC 09-2544, 2012 WL 6019296, at *6 (D. Md. Nov. 30, 2012) (*citing Beauchamp v. City of Noblesville, Indiana,* 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate.")).

snow, and at a distance--he cites no case holding that a police
officer may not rely upon a victim's identification in such
circumstances.

Dale never argues that "there is an apparent reason for the
officer to believe that [Wilson] was lying" or that the officers
had other exculpatory evidence to outweigh the identification.
Wilson was positive in her identification, informing Officers
Howard and Parlett, "That's him."  ECF No. 1 at ¶ 43.  Moreover,
Dale resembled the description of Wilson's attacker that she
provided after her rape.  *See, e.g.*, *Humbert v. O'Malley*, No.
WDQ-11-0440, 2014 WL 1266673, at *8-9 (D. Md. Mar. 25, 2014);
*Shriner v. Wainwright*, 715 F.2d 1452, 1454 (11th Cir. 1983).
There was probable cause to arrest Dale under federal law.

Officers Howard and Parlett also had probable cause for the
arrest under Maryland law.  In Maryland, probable cause is
"facts and circumstances sufficient to warrant a prudent
[person] in believing that the [suspect] had committed or was
committing an offense."  *DiPino v. Davis,* 729 A.2d 354, 361 (Md.
1999).  "To determine whether an officer had probable cause,
under that conception, the reviewing court necessarily must
relate the information known to the officer to the elements of
the offense that the officer believed was being or had been
committed.  The officer, of course, must undertake the same
analysis in determining, in the first instance, whether the

25

person may lawfully be arrested." *Id.* "What facts are sufficient to show want of probable cause in any case, is, of course, a question of law for the court; but whether such facts are proved by the evidence is a question for the jury." *Kennedy v. Crouch*, 62 A.2d 582, 587 (Md. 1948)).

In *Kirby v. State*, 426 A.2d 423, 426-27 (Md. Ct. of Spec. App. 1981), the Court of Special Appeals of Maryland held that a police officer had probable cause to arrest a suspect for sexual assault when the officer "was flagged down by a woman, . . . and advised by her that she had been sexually assaulted several weeks previously and that the gentleman walking westbound on the opposite side of the road was responsible for said assault," and the woman identified the man as her attacker again after the officer stopped him. The court concluded that "the requisite probable cause was supplied by the victim." *Id.*; *see also Doering v. State*, 545 A.2d 1281, 1290-91 (Md. 1988) (suspect identified by victim's granddaughter).

The facts in *Kirby* are remarkably similar to those alleged in the complaint. As was the case in *Kirby*, Officers Howard and Parlett had the necessary probable cause--supplied by the victim--to arrest Dale for sexual assault.

Accordingly, Dale's state and federal allegations for malicious prosecution and false arrest fail to state a claim upon which relief can be granted.

26

3. Dale's Section 1983 *Brady* Claim

Dale alleges that the Police Defendants violated his constitutional rights by failing to produce exculpatory material, namely the DNA results that eventually led to his release.

Under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the "suppression by the prosecution of evidence favorable to an accused . . . violates due process [under the Fourteenth Amendment] where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To prove a *Brady* violation, the accused must show that the evidence (1) is exculpatory or impeaching, (2) was suppressed by the Government, and (3) was material to his defense, i.e., he was prejudiced by the suppression. *See United States v. Moussaoui,* 591 F.3d 263, 285 (4th Cir. 2010).

The Fourth Circuit has held that a police officer who withholds exculpatory information from a prosecutor *can* be liable under § 1983, *Goodwin v. Metts,* 885 F.2d 157, 162 (4th Cir. 1989), but only when the officer's failure to disclose "deprived the § 1983 plaintiff[] of [his] right to a fair trial," *Taylor v. Waters,* 81 F.3d 429, 436 n.5 (4th Cir. 1996). As Dale was never tried on this rape charge, he has not stated a claim that the police defendants violated his Fourteenth Amendment rights by their alleged failure to disclose

27

exculpatory evidence.[31]  *See Taylor*, 81 F.3d at 436 & n.5;

*Hockett v. Acosta*, 2:03CV00012, 2004 WL 1242757, at *3 (W.D. Va.

June 3, 2004) (finding no Fourteenth Amendment violation when

plaintiffs did not allege that any favorable evidence was

unavailable at their criminal trial); *Windham v. Graham*,

CIVA908CV1935PMDGCK, 2008 WL 3833789, at *7-*9 (D.S.C. Aug. 14,

2008) (pretrial detainee who alleged that police withheld

favorable evidence had no cause of action under the Fourteenth

Amendment because he had not yet been tried).[32]

The Fourth Amendment, rather than the Fourteenth Amendment,

"define[s] the 'process that is due' for seizures of person or

property in criminal cases, including the detention of suspects

pending trial." *See Taylor*, 81 F.3d at 435-36 (*quoting Gerstein

v. Pugh*, 420 U.S. 103, 125 n.27, 95 S. Ct. 854, 869 n.27, 43 L.

---

[31] Further, to the extent that Dale argues that police failure to
disclose exculpatory evidence violated his Fourteenth Amendment
rights because probable cause for his prosecution was lacking,
his claims fail.  In *Albright*, 510 U.S. at 269, 114 S. Ct. at
810, the Supreme Court held that there is no Fourteenth
Amendment right to be free from prosecution on less than
probable cause.  *See Lambert v. Williams*, 223 F.3d 257, 261 (4th
Cir. 2000).

[32] *See also Jean*, 221 F.3d at 659-60 (Police "failures to
disclose" exculpatory evidence "do not implicate constitutional
rights where no constitutional deprivation results therefrom.
In this context, the constitutional deprivation must be defined
as a deprivation of liberty without due process of law.  In the
absence of a cognizable injury, *such as a wrongful criminal
conviction*, . . . no § 1983 remedy will lie.") (emphasis added)
(Wilkinson, C.J., concurring in affirmance of judgment of
district court by an equally divided en banc court).

Ed. 2d 54 (1975)); *Hockett*, 2004 WL 1242757, at *3 ("As to the pre-arrest suppression of evidence, it is established in this circuit that the 'Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial.'" (*quoting Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 184 (4th Cir. 1996)). When probable cause has been determined by a neutral and detached magistrate, "the Fourth Amendment does not impose any further requirement of judicial oversight or reasonable investigation to render pretrial seizure reasonable." *See Taylor*, 81 F.3d at 436. Thus, an officer's failure to disclose exculpatory evidence after a suspect is arrested based on a determination of probable cause "does not render the continuing pretrial seizure of a criminal suspect unreasonable under the Fourth Amendment." *Id.* at 435-37 (holding that Fourth Amendment jurisprudence did not clearly render unconstitutional an officer's failure to disclose exculpatory evidence to the prosecution); *see also Bailey*, 19 F.3d at *6 (rejecting defendant's argument that officers have a *Brady*-like duty under the Fourth Amendment to disclose all exculpatory evidence when applying for a warrant). Accordingly, Dale has not established that the police defendants violated his clearly established Fourth Amendment rights by failing to disclose exculpatory evidence to the prosecution.

4. Supervisory Liability Claims under § 1983

29

The remaining federal claims in the complaint allege that former Commissioner Bealefeld and the BCPD established policies and customs which resulted in the police officers causing Dale's constitutional injury.  The Court, however, has already determined that the complaint fails to state a § 1983 claim against any individual officer.  Accordingly, all remaining claims against former Commissioner Bealefeld and the BCPD must be dismissed.  *See Waybright v. Fredrick Cnty.*, 528 F.3d 199, 203 (4th Cir. 2008) ("The § 1983 claim against Jeffrey Coombe is the gateway to all the other § 1983 claims, for supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages.") (quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).

5. State Law Battery Claims

In Count IX, Dale alleges that the Police Defendants "commit numerous batteries upon [] Dale."  ECF No. 1 at ¶ 138. Unlawful force is also one of the bases for Dale's claim under Count VIII that the Police Defendants violated the Maryland Declaration of Rights.  *See id*. at ¶¶ 125-36.  There are no facts in the complaint supporting these conclusionary allegations.  The complaint does not identify which of the many police officers in the complaint committed these alleged batteries, when they occurred, or how they occurred.  There are

only two officers mentioned in the factual allegations, and Dale never alleges that they even touched him--he does not describe his arrest.

Accordingly, any claim based on "battery" or "excessive force" by police officers must be dismissed under Rule 8.

6. Remaining State Law Claims

Dale's remaining state law claims are dependent on his state malicious prosecution, false arrest, and battery claims. For example, Dale alleges that many of the defendants acted negligently because they "failed to intervene to prevent the unlawful investigation into [] Wilson's claim, the unlawful arrest and detention of [] Dale as well as their malicious prosecution underlying the charges against him."  ECF No. 1 at ¶ 162.

Because the Court has already determined that the complaint fails to state claims for malicious prosecution, false arrest, and battery, Dale's remaining state law claims must be dismissed.

III. Conclusion

For the reasons stated above, all pending motions to dismiss will be granted.

_9/15/15_
Date

_____
William D. Quarles, Jr.
United States District Judge

31